**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**ALAN J. BUSH**                                                                  **PLAINTIFF**

**V.**                                              **CIVIL ACTION NO.1:08CV0038 LTS-RHW**

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,**
**JOHN J. FLETCHER, ET AL.**                                            **DEFENDANTS**

**MEMORANDUM OPINION GRANTING MOTION TO REMAND**

The Court has before it the plaintiff's motion [6] to remand this case to the Circuit Court of Jackson County, Mississippi.  The Court also has before it the motion [34] of Nationwide for Leave to file a Sur-Reply in opposition to the motion to remand.  For the reasons set out below the motion to remand will be granted.  The motion to file a sur-reply brief will be denied.

For several years prior to Hurricane Katrina, Plaintiff Alan J. Bush (Bush) had homeowners insurance coverage with Nationwide Mutual Fire Insurance Company (Nationwide).  Defendant  John J. Fletcher (Fletcher) was the local agent who sold Bush his Nationwide policies.  The insured property was Bush's residence situated at 2411 Pinewood Avenue, Pascagoula, Mississippi.  The last year for which there was undisputed coverage for Bush's property was policy year November 6, 2003, through November 6, 2004.   "Union Planters Mrtg." of Memphis, Tennessee, is shown as the first mortgagee (and only mortgagee) on this 2003 - 2004 policy. On November 6, 2004, coverage under this policy expired, and Bush did not have homeowners coverage in force with Nationwide when Hurricane Katrina made landfall on August 29, 2005.

Bush filed this action against Nationwide and Fletcher in the Circuit Court of Jackson County, Mississippi, and the defendants removed the action to this court on grounds of diversity of citizenship and the requisite amount in controversy.  Bush's motion to remand challenges the propriety of the removal and the Court's subject matter jurisdiction under 28 U.S.C. §1332.  Both Bush and Fletcher are resident citizens of Mississippi, and if Bush has stated a cause of action against Fletcher, the complete diversity of citizenship necessary to establish this Court's subject matter jurisdiction is absent.

Nationwide asserts that Bush has no valid grounds to proceed on his claims against Fletcher and that Fletcher has been improperly joined as a defendant in order to deprive Nationwide of its opportunity to have this case decided in a federal forum.  In order to evaluate these assertions, I must apply a very liberal standard.  Under this standard, the Court must accept as true the material allegations of the complaint, and

the Court must grant the plaintiff all reasonable inferences in support of his claims based upon those facts.  I must also resolve all doubtful issues of state law in favor of the plaintiff.  The complaint against the non-diverse defendant, Fletcher, may be dismissed only if the facts Bush has alleged are insufficient, if proved, to establish a right of recovery against Fletcher. *Bell Atlantic Corp. v. Twombly*, 75 USLW 4337, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  In reaching the merits of this motion, the Court may consider evidence outside the pleadings and treat the motion to remand as if it were a motion for summary judgment under F.R.Civ.P. 56.  I will do so in this case, taking into consideration the deposition testimony of both Bush and Fletcher and Bush's affidavit.

Under this liberal standard, misjoinder or fraudulent joinder is an issue on which the removing party has the burden of proof.  *B., Inc. v. Miller Brewing Co*., 663 F.2d 545 (5th Cir.1981);  *See Dodson v. Spiliada Maritime Corp*. 951 F.2d 40 (5th Cir. 1992); *Hart v. Bayer Corp*., 199 F.3d 239 (5th Cir.2000).  Thus, in order to establish that removal is proper, Nationwide and Fletcher must demonstrate that Bush has not alleged facts sufficient to support a reasonable belief that he may prevail on the merits of his claim against Fletcher.  The facts alleged must be sufficient to raise a claim for relief above the speculative level, assuming that all the facts alleged are true, even if those facts may be doubtful.  *Bell Atlantic Corp. v. Twombly*, 75 USLW 4337, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

Under applicable Mississippi law, an insurance agent has a duty of reasonable care to those who purchase policies from him.  *McKinnon v. Batte*, 485 So.2d 295 (Miss.1986); *Lovett v. Bradford,* 676 So.2d 893 (Miss.1996); *First United Bank of Poplarville v. Reid*, 612 So.2d 1131 (Miss.1992).

Bush contends that Fletcher was negligent in connection with the November 6, 2004, non-renewal of Bush's Nationwide homeowners policy.  There are major factual disputes concerning exactly what transpired around the time Bush's Nationwide policy was up for renewal in the Fall of 2004, and I must assume, for purposes of deciding this motion, that the facts most favorable to Bush, the party seeking remand, are true.

Although this dispute arose from events in the Fall of 2004, a very similar factual situation occurred in the Fall of 2002, and this earlier situation may shed a little light on the current controversy.  In September 2002, Nationwide notified Bush that he needed to make certain repairs to the insured property and that his coverage limit should be increased from $58,000 to $65,000.  Fletcher testified that Bush made the necessary repairs.  Fletcher or someone in his employ took photographs of the repairs, sent the photographs to Nationwide, and Nationwide issued a new policy to Bush for policy year 2002 through 2003.  (Fletcher Deposition Page 27 through Page 29) There is a document in Fletcher's file indicating that the 2002 repairs were made, and this document purports to bear Bush's signature.  This document is discussed in Fletcher's deposition at pages 35 - 37.  Bush contends that he did not sign this document, and, because his name is misspelled (Allen instead of Alan), it is not likely that this

document bears Bush's true signature.  Bush complains in his affidavit about this
"forgery," but since there is no dispute concerning Bush's insurance coverage for policy
year 2002 through 2003, I do not see the relevance of that charge.  In 2002, Bush
made the repairs Nationwide required; Fletcher verified that the repairs had been made
by taking photographs; Fletcher sent the photographs to Nationwide; and Bush had
coverage with Nationwide for policy year 2002 through 2003.  The dispute before the
Court is not what happened in the Fall of 2002, but what happened in the Fall of 2004.

      The relevant sequence of events began in mid-summer.  On June 22, 2004,
Nationwide sent a letter to Bush.  This letter indicated that Nationwide had done an
inspection of the exterior of the insured property and discovered the property was in
need of certain repairs.  The letter stated, in pertinent part:

> *We did observe exterior conditions at your home that could increase
> the chance of a loss.  We want to keep you as a customer and ask
> you to make the following maintenance or repairs to your home to remain
> eligible for coverage with Nationwide.*
>
> *Repair and paint soffits/fascia on exterior of dwelling.*
>
> *Once the above actions have been taken, we ask that you forward
> verification to your agent.  This can be done with a photograph or a
> copy of the work contract showing the work has been complete [sic].
> It will be necessary for you to provide this information prior to September
> 21, 2004.  If we do not receive this information, you may risk cancellation
> of your insurance policy at the next renewal.*
>
> *We do appreciate your business and hope that you understand the
> benefit of this program for you and all other Nationwide policyholders.  If
> you have questions about this program or the actions needed on your part,
> please contact your agent John J. Fletcher at 2287620768.*

      Bush testified that he does not recall receiving this letter, and he does not recall
taking any action in response to it, but Bush acknowledges in his pleadings that he
received this letter (Complaint Paragraph 9).  The Complaint alleges that Bush "made
the repairs and contacted the Defendant, John J. Fletcher, and advised John J.
Fletcher that the repairs had been made and provided Defendant, John J. Fletcher, with
evidence that the repairs had been made." (Complaint Paragraph 9) This allegation
does not square with the deposition testimony taken in this case.  Both Bush and
Fletcher testified that Bush made a phone call to Fletcher's office stating that the
repairs had been made, but neither Bush nor Fletcher identified or mentioned any
evidence Bush submitted concerning the repairs.  Nationwide's letter stated two
alternative ways the insured could verify that the required repairs had been made: by
submitting a photograph of the repairs or by submitting a copy of the contract for the

work showing that the repairs had been completed.  Neither Bush nor Fletcher testified that Bush had followed either of these alternative methods of verifying the repairs.

Bush's phone call to Fletcher's office concerning the repairs came after a second letter he received from Nationwide.  On September 23, 2004, Nationwide sent Bush a second letter, via certified mail, stating:

> *We sincerely regret we are unable to continue your Homeowners insurance protection beyond the current term.*
>
> *This is notice that this policy is non-renewed effective 12:01 a.m., local time, November 6, 2004.*
>
> *The reason(s) for this action is due to:*
>
>    *\**    *soffits and fascia on exterior of home in bad shape*
>
> *You may become eligible for coverage if the following criteria are met:*
>
>    *\**    *repair and paint soffits and fascia on exterior of home.*
>
> *Should you have any questions, please contact your Nationwide representative JOHN J FLETCHER . . . .*

A copy of this September 23, 2004, letter was also sent to Bush's lender, Union Planter's Bank, the only lender identified in the declarations page of the Nationwide policy for policy year 2003 - 2004.  Bush's Complaint mis-states the particulars of this second letter.  The Complaint alleges that this letter stated, "that Plaintiff's Nationwide policy would not be renewed effective November 6, 2004, if the Plaintiff did not 'repair and paint soffits and fascia on exterior of home.'" (Complaint Paragraph 9) In fact, this second letter plainly and unconditionally states that Bush's policy would not be renewed on November 6, 2004, the policy's expiration date.  The letter required that the repairs be made in order to "become eligible for coverage."  I find that the September 23, 2004, letter was a valid notice of non-renewal of Bush's Nationwide policy.

Bush has alleged that "Alan Bush, Regions and First Federal never received any notice of cancellation or non-renewal of the Nationwide policy." (Complaint Paragraph 9)  In fact, the September 23, 2004, letter was just such a notice.  It is apparently undisputed that Bush received this notice, and it is apparently also undisputed that the first mortgagee shown on the policy (Union Planters) also received a copy.

Bush testified that when he received the September 23, 2004, letter (the second letter) he "panicked a little bit and I called Jay [Fletcher] and that's when I did call Nationwide." (Bush Deposition Page 35, Line 2 - 5)  Bush is uncertain of the dates and

other specifics of his conversation or conversations with Fletcher.  Bush testified that, in addition to his phone call to Fletcher, he left recorded messages on Nationwide's 800 number.  These messages consisted of Bush's name and phone number.  Bush never spoke directly with any representative of Nationwide at its 800 number, and no one with Nationwide returned his calls or responded to his recorded messages. (Bush Deposition Page 35)

Bush testified that he hired a local contractor, Lester Charbonnet, to make the repairs required by the September 23, 2004, letter.  Bush testified that the repairs were completed during October and that he then notified someone in Fletcher's office, perhaps Fletcher himself, by telephone that the repairs had been done.  After this last telephone conversation, Bush assumed that his Nationwide coverage would be reinstated.  Bush testified that there were no other communications between Bush and Fletcher, or any other Nationwide representative until after Hurricane Katrina when Bush alleges he learned for the first time that his Nationwide coverage was no longer in force.

Bush and Fletcher had a longstanding friendship at the time this controversy arose, and Fletcher does not dispute the substance of Bush's account of the telephone conversations Bush described in his deposition testimony.  Fletcher recalls Bush having made two telephone calls to Fletcher's office.  The first call was an inquiry about a letter of non-renewal Bush had received (I assume that this was the September 23, 2004, letter of non-renewal).  The second was a call to notify Fletcher's office that Bush had made the repairs that Nationwide required to make Bush's property once again eligible for Nationwide homeowners coverage. (Fletcher Deposition Pages 38 and 39)  The important difference in Bush's account of the facts and Fletcher's testimony concerns what happened after Bush reported that the repairs had been made.

Fletcher testified that upon receiving Bush's phone call notifying them that the repairs had been done, one of Fletcher's employees, Cindy Collins (Collins), responded to Bush's second phone call by going to Bush's property to inspect and photograph the repairs so that the repairs could be verified in accordance with Nationwide's requirements.  Fletcher testified that Collins discovered the repairs had not been made.  Fletcher testified that it is his understanding that Collins called Bush and told him about her inspection. (Fletcher Deposition Pages 39 and 40)  Presumably, Collins told Bush that she could not verify the repairs.

Bush denies receiving any communication from Collins or anyone else in Fletcher's office after he called Fletcher's office and reported that the repairs were complete.  There is no statement from Collins in the record concerning her inspection of Bush's property, the photographs she took, or her conversation, if any, with Bush after Collins carried out her inspection.  On these important issues of fact, the record contains only Fletcher's hearsay testimony concerning Collins's actions and her conversation with Bush.

According to Fletcher, the photographs Collins took were not sent to Nationwide because they did not document the repairs; in fact, they did the opposite, showing that the repairs had not been made. (Fletcher Deposition Pages 39 and 40)  At page 41 of Fletcher's deposition, there is a reference to a document that no one has seen fit to include as an exhibit.  From the discussion shown in the deposition transcript, this document apparently indicates that the photographs Collins took were sent to a Nationwide personal lines underwriter named Shonna Green. (Fletcher Deposition Page 41 and 42)  These photographs were not part of the file Fletcher maintained for Bush's account, and the photographs are not part of the record in this case.

There is a dispute whether the last conversation between the parties was Bush's notification that the repairs had been done (Bush's contention) or Collins's telephone call to Bush to notify him of the outcome of her inspection (Fletcher's contention).  But the parties agree that there was no further communication between Bush and Fletcher or anyone in his office from November 6, 2004, until after the storm when Bush claims to have learned for the first time that Nationwide coverage (for policy year 2004 - 2005) for his residence had not been in effect at the time of the storm.

Bush does not recall paying his homeowners insurance premium for the policy year 2004 - 2005, and Nationwide's records indicate that Bush did not pay a premium for policy year 2004 - 2005.  Thus, there is no evidence in the record to support an inference that Bush did pay a premium for policy year 2004 - 2005, and I will accept Nationwide's contention that Bush did not pay a premium for coverage during policy year 2004 - 2005.

As I noted above, in order to determine whether Bush has stated a cause of action against Fletcher, the non-diverse defendant, I must apply a very liberal standard. I must resolve all factual disputes in favor of Bush, and I must give Bush the benefit of all doubtful issues of law.  Using this standard, I must decide whether there is any reasonable basis in fact and law to support a finding that Bush may prevail on the merits of his negligence claim against Fletcher, and if that is the case, I must grant the motion to remand.  It is not appropriate, at this juncture, to gauge the strength or weakness of Bush's claim against Fletcher.  My task, using this liberal standard and considering all of the evidence now in the record in the light most favorable to Bush, is to ascertain whether there are genuine issues of material fact that preclude my finding that Fletcher will prevail on the merits of Bush's claim against him, as a matter of law.

I do not have the benefit of Collins's testimony or even her affidavit, concerning the first factual issue that must be resolved: whether Bush actually made the repairs to the insured property in response to the September 23, 2004, letter.  Bush testified unequivocally that he made the repairs and that he reported completion of the repairs to Fletcher's office by telephone.  Fletcher does not deny that Bush notified his office of the repairs, but Fletcher asserts that the repairs were not in fact made.  Under the standard applicable to this motion, I must accept Bush's testimony on this point and assume, for purposes of deciding this motion, that the repairs were done and reported

-6-

to Fletcher's office before the non-renewal of Bush's Nationwide policy on November 6, 2004.  It is true that this method of reporting the repairs was not one of the options (photographs of the repairs or a copy of the work contract) set out in Nationwide's June 22, 2004, letter, but Fletcher testified that he undertook to properly document the repair work, just as he had in the similar situation in 2002.  I must conclude, therefore, that Bush's method of reporting these repairs was acceptable to Fletcher.

From this point forward, the analysis becomes more difficult, because it begins to become necessary to make inferences that are neither supported nor contradicted by the evidence now in the record.  Based on the assumption that Bush made the repairs and reported the repairs to Fletcher (thereby disregarding Fletcher's testimony that Collins's photographs indicated the repairs had not been made), I do not think it unreasonable to conclude that Fletcher was obligated by the standard of reasonable care to verify the repairs and notify Nationwide that the repairs had been accomplished.  Fletcher testified that this is exactly what he undertook to do.

If this had been done, and if the repairs had in fact been made (as I must assume for the purpose of deciding the merits of this motion to remand), it is reasonable to assume that Nationwide would have either reinstated Bush's policy or issued a new policy for him.  This is exactly what took place in 2002.  Had this been done, Nationwide would have submitted a bill for the premium for policy year November 6, 2004, through November 6, 2005, and upon payment of that premium Bush would have secured coverage that would have been in effect at the time of the storm.  Of course, none of this came to pass.  Nationwide did not receive verification of the repairs, Nationwide did not submit a bill, and Nationwide did not receive a premium for the renewal of Bush's coverage.  Bush's policy expired by its own terms on November 6, 2004, just as the notice Nationwide sent to Bush on September 23, 2004, said it would.

Bush never paid a premium for coverage during policy year November 6, 2004, through November 6, 2005, and on a fully developed record, this non-payment of a premium would almost certainly result in judgment in favor of Nationwide on Bush's direct claim (contract claim) against Nationwide.  But on the incomplete record now before me, and under the standard that I must apply to this motion to remand, I cannot say, as a matter of law, that the failure to pay the premium completely undermines Bush's negligence claim against Fletcher.  The merits of Bush's claim against Nationwide are not presently before me.

Bush testified that he paid his insurance premiums on an irregular basis, sometimes annually, sometimes semi-annually, sometimes monthly, in response to Nationwide's billing. (Bush Deposition Page 70) Bush also testified that on at least one prior occasion Fletcher had called him to remind him that his premium was due. (Bush Deposition Page 52) At the time Bush's policy was expiring, in late 2004, Nationwide did not submit a bill for Bush's renewal premium, and while Bush's failure to notice that a bill had not arrived may constitute substantial contributory negligence, Fletcher's

-7-

negligence may also have played a material part in Nationwide's not having submitted a bill and therefore in Bush's failure to pay this premium.  The implications of failing to respond to a premium bill are much clearer than is failing to notice that a bill has not arrived.

Accepting all of Bush's allegations as true, and granting Bush every favorable inference on issues of fact and giving Bush the benefit of all doubtful issues of law, the question before me is:  If Bush made the necessary repairs and reported the repairs to Fletcher's office by telephone, did Fletcher thereafter meet his duty of reasonable care? That question turns on whether Fletcher's testimony that the repairs were not made is true.  If Fletcher (acting through Collins) responded to Bush's report concerning the repairs and discovered (through Collins) that Bush's report was not true, i.e. that the repairs had not been made, then his duty would require no more than his notifying Bush of this discovery.  This is exactly what Fletcher testified he (acting through Collins) did. But I cannot resolve this factual dispute by accepting Fletcher's version of events.  I am bound to accept Bush's version of events, particularly on the pivotal issue of whether these repairs were in fact made.

If Collins's inspection and her photographs documented the repairs, Fletcher's duty of reasonable care would require that he forward this verification to Nationwide and take reasonable steps to assure that the repairs were taken into consideration in Nationwide's decision whether to renew Bush's coverage or issue Bush a new policy.  If the repairs were made and reported to Fletcher, and Fletcher then failed to discharge his duty to verify the repairs and submit that verification to Nationwide, Bush may have a valid cause of action against Fletcher for negligence.

In my view, under the standard I must apply to this set of facts, I cannot say, as a matter of law, that Bush has failed to state a cause of action against Fletcher and that Fletcher is therefore entitled to judgment as a matter of law.  Reaching this conclusion requires that Bush be given the benefit of several doubtful and disputed issues of fact and that Bush be granted a broad interpretation of the scope of Fletcher's duty of reasonable care.  It even requires that I make inferences concerning the actions Fletcher should have taken on Bush's version of sharply disputed issues of fact, particularly the question whether the repairs to Bush's property were actually made. This in turn requires that I infer that the photographs Collins took would have verified those repairs.  Yet at this juncture, Bush is entitled to the benefit on all of these disputed issues of law and favorable inferences on these disputed facts.  Fletcher, who is Collins's current employer, has not submitted Collins's affidavit nor her deposition testimony, and I therefore have only Fletcher's hearsay testimony concerning Collins's actions (Collins's discovery that the repairs were not done and Collins's subsequent phone call to Bush).   Even Collins's testimony, by affidavit or deposition, would do no more than make a clearer and, from the defendants' point of view, a stronger issue of fact on these points.  Bush would still be entitled to have these and all the other issues of fact resolved in his favor.

-8-

The genuine issues of material fact discussed above are not susceptible to summary adjudication on the record now before me.  I must therefore grant Bush's motion to remand.  An appropriate order will be entered.

**DECIDED** this 6th day of August, 2008.

s/ L. T. Senter, Jr.
L. T. SENTER, JR.
SENIOR JUDGE